

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**Signed November 29, 2018**                    **United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | BANKR. CASE NO. 16-32435-BJH |
| BFN OPERATIONS LLC. | § | (Chapter 7) |
| | § | |
| Debtor. | § | |
| _____ | § | |
| | § | |
| DIANE G. REED, AS CHAPTER 7 | § | ADV. PROC. NO. 18-03202 |
| TRUSTEE OF BFN OPERATIONS | § | |
| LLC, | § | Related to ECF No. 6 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FREDERICK WALTON D/B/A | § | |
| WALTON FARMS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION ON MOTION TO
## DISMISS ADVERSARY PROCEEDING

Chapter 7 trustee Diane G. Reed (the **"Trustee"**) sued Frederick Walton d/b/a Walton Farms (**"Walton"**) to recover prepetition transfers under 11 U.S.C. "547 and 548 and to disallow Walton's claim. *See* 11 U.S.C. '502(d). Walton responded by moving to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012, AP [ECF No. 6].[1] Alternatively, Walton sought summary judgment under Fed. R. Civ. P. 56, incorporated by Fed. R. Bankr. P. 7056. *Id.* The Trustee opposes the motion. AP [ECF No. 9].

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The Parties

BFN Operations LLC (**"Debtor"**)[2] ran a profitable wholesale nursery business until 2016, when unanticipated inclement weather damaged its plant inventory and led to reduced sales. At the same time the Debtor faced a prescheduled reduction in its pre-petition credit agreements borrowing base. The combination led the Debtor to file chapter 11 on June 17, 2016 (the **"Petition Date"**). The court later authorized the sale of substantially all the Debtor's assets[3] after which the case converted to a chapter 7 liquidation.[4]

Frederick Walton, a sole proprietor doing business as Walton Farms, hauled for and delivered inventory to the Debtor.[5]

---

[1] BK [ECF No. __] refers to pleadings in the main bankruptcy case, case no. 16-32435-BJH-7. AP [ECF No. __] will refer to pleadings in the adversary proceeding, case no. 18-03202-BJH.

[2] BFN Operations and affiliated entities' chapter 11 cases were jointly administered. See Bankruptcy Case No. 16-32435 [ECF No. 39]. The affiliates' cases were converted to chapter 7 on January 1, 2017 (*see* ECF No. 559). All the cases except BFN Operations, LLC's have been closed as "no asset" cases.

[3] *See Sale Order* [ECF No. 306]; *Asset Purchase Agreement Dated as of August 11 2016 By and Among LM Farms, LLC, as Purchaser and BFN Operations LLC and BFN Properties LLC as Sellers* [ECF No. 239].

[4] BK [ECF No. 559].

[5] AP [ECF No 1]; [ECF No. 6]; AP [ECF No. 6]; [ECF No. 8].

### B. Walton's Motions

### 1. Motion to Dismiss

Walton argues first that the complaint should be dismissed because the Trustee did not properly name him as a defendant. He claims that he is an individual who operates under the "DBA name of Walton Farms"[6] but that Walton Farms "is not a corporation, owns nothing, has no farms, produces or sells NO agricultural products and provided no goods of any kind to Debtor. . ."[7] He contends that Walton Farms has no legal standing and therefore cannot legally be indebted.[8] This, along with Walton's ordinary course, contemporary exchange and subsequent new value defenses asserted in his motion, make the Trustee's complaint "without a foundation in fact . . . wherein no relief could be granted.

The Trustee responds[9] that she had no reason to suspect that "Walton Farms" was merely a trade name for a sole proprietorship; and that as a matter of law, she relied on Walton's use of the fictitious name. She reasons that because the trade name Walton Farms was not registered with the Ohio Secretary of State, it must be treated as a "fictitious name"[10] under Ohio Rev. Code § 1329.01. The Trustee contends that she correctly named Walton Farms a defendant under Ohio law because the trade name Walton Farms was not registered and that she did not know the identity of the person who had used the trade name in prebankruptcy dealings with the

---

[6] AP [ECF No. 6] at 1 of 14; [ECF No. 8] at ¶ 2.

[7] AP [ECF No. 6] at 1 of 14.

[8] AP [ECF No. 8] at ¶ 3.

[9] AP [ECF No. 9].

[10] Walton's capacity to be sued is governed by Ohio law because he is an Ohio resident. *See* Fed. R. Civ. P. 17, made applicable by Fed. R. Bankr. P. 7017 (capacity to sue or be sued determined by the law of the individual's domicile).

Debtor.[11] The Trustee argues in the alternative that Federal Rule of Civil Procedure 15(c) permits amending the complaint to name Frederick Walton, *individually*, as the defendant.[12]

2. Motion for Summary Judgment

In support of his argument for summary judgment as alternative relief, Walton contends:

(1) the Trustee cannot prove that the Debtor was insolvent on the date of the alleged transfers;

(2) the transfers were "made in the ordinary course of business or financial affairs of the debtor and the transferee" pursuant to 11 U.S.C. §547(c)(2)(A);

(3) the transfers were a contemporaneous exchange for new value under 11 U.S.C. §547(c)(1); and

(4) Walton provided subsequent new value to the Debtor pre-petition under 11 U.S.C. §547(c)(4).[13]

The Trustee responds that Walton has failed to produce admissible evidence to rebut the presumption of insolvency under 11 U.S.C. '547(f) or support any of his affirmative defenses.

This memorandum opinion explains the reasons for denying Walton's motion to dismiss and motion for summary judgment and granting the Trustee leave to amend the complaint to name Walton as the defendant.

## II.      RULE 12(B)(6) MOTION TO DISMISS

### Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief. A Rule 12(b)(6) motion is appropriate if the plaintiff has not provided fair notice of his claim with

---

[11] AP [ECF No. 9] at 3 (citing *Family Med. Found., Inc. v. Bright*, 2002- Ohio-4034, ¶ 15, 96 Ohio St. 3d 183, 187, 772 N.E.2d 1177, 1180; *Kirk Excavating & Constr., Inc. v. Columbus Equip. Co.*, 704 F. App'x 492, 499 (6th Cir. 2017)).

[12] *Id.*

[13] AP [ECF No. 6].

factual allegations that, when accepted as true, are plausible and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Motions to dismiss for failure to state a claim are generally viewed with disfavor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Rule 15(a) permits a plaintiff to amend a complaint once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a).[14] Because Mr. Walton has already answered the complaint the Trustee as plaintiff must obtain leave from the court to amend, which the Federal Rules declare should be granted freely "when justice so requires." *Id.; see also In re Kilroy*, 357 B.R. 411, 419 (Bankr. S.D. Tex. 2006).

### Legal Analysis

Walton urges dismissal under Rule 12(b)(6) based solely on his contention that he operates individually, did business with the debtor prepetition as an individual, and that Walton Farms is nothing more than a name. Specifically, Walton asserts that Walton Farms is a family name he merely "assumed" when his father retired,[15] which "sometimes help[s] with purchasing discounts."[16] He represents that Walton Farms is not a corporation and has never "sold any [p]roduct to Debtor nor purchased [p]roduct from Debtor;[17] rather, Frederick Walton admits that

---

[14] Federal Rule of Civil Procedure 15(a) states in relevant part:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. . .

[15] AP [ECF No. 6] at 1 of 14.

[16] AP [ECF No. 8] at ¶ 4.

[17] *Id.* at ¶ 6.

he individually provided services for the Debtor before its chapter 11 filing, albeit using the assumed name Walton Farms.[18]

Ohio law permitted the Trustee to rely on Walton's use of the assumed name Walton Farms and Walton cannot hide behind the fiction to avoid potential liability for the prepetition transfers. His use of the name without registering it with the Ohio Secretary of State is not dispositive, and may infer liability against Walton, personally. Specifically, Ohio Revised Code § 1329.10 permits a plaintiff to sue an individual who engages in business using a trade or fictitious name. Ohio Rev. Code § 1329.10(C). *See also Family Medicine Found., Inc. v. Bright*, 96 Ohio St. 3d 183, 772 N.E.2d 1177, 1180 (2002). *Fictitious name* is defined in relevant part as a "name used in business or trade that is fictitious and that *the user has not registered* or is not entitled to register as a trade name." Ohio Rev. Code § 1329.01(A)(2) (emphasis added). The Ohio Supreme Court has construed these statutes to permit a plaintiff to sue a party named only by its fictitious name specifically if the plaintiff had *no knowledge* that the entity was doing business using a fictitious name. *Bright*, 96 Ohio St.3d at 1180 (emphasis added).[19] Critical to the Ohio court's analysis was that the plaintiff lacked knowledge of the defendant's use of a fictitious name in its dealings. This factor is especially relevant here because the Trustee claims that she had no knowledge that Walton Farms was merely a trade name for Walton, individually.

---

[18] AP [ECF No. 6] at 1 of 14.

[19] *Cf. Kirk Excavating & Constr., Inc. v. Columbus Equip. Co*., 704 F. App'x 492, 499 (6th Cir. 2017) (critical factor in allowing a plaintiff to bring suit against and rely on a fictitious name is whether the plaintiff was "*repeatedly put on notice*" and, even then, failed to name the correct party or amend the complaint) (emphasis added); *Patterson v. v. & M Auto Body*, 63 Ohio St.3d 573 (1992) (suit may not be maintained against a defendant solely under fictitious name when the plaintiff was *repeatedly put on notice* that the party he sued was a sole proprietorship) (emphasis added).

Although there is no evidence in the record by either party indicating whether Walton Farms is or is not a legal entity, documents filed in the underlying bankruptcy case suggested that the debtor had cause to believe that the individual Frederick Walton, rather than an entity named Walton Farms, was providing services to it before bankruptcy. The court takes judicial notice of these documents[20] and concludes that it was reasonable for the Trustee to rely on the name "Walton Farms." For example, the exhibit to Debtor's Schedule E/F listing unsecured creditors refers to Walton as "Walton Farms." Walton has provided no evidence to support a belief that he ever sought to correct the name under which he was doing business with the Debtor.[21] Nor does the June 28, 2016 Letter Agreement addressed to Fred Walton *and Walton Farms* suggest otherwise.

Regardless of the Trustee's ability to continue prosecuting her claims against the fictitious entity Walton Farms rather than the individual Frederick Walton, the Trustee seeks to amend the complaint to name Walton individually. Whether she should be permitted to do so now depends on whether an amendment would expose Mr. Walton to the risk of unfair prejudice, "the touchstone of the inquiry under rule 15(a)*." In re Kilroy,* 357 B.R. 411, 419 (Bankr. S.D. Tex. 2006*) (citing Lowrey v. Texas A & M Univ. Sys*., 117 F.3d 242, 246 (5th Cir. 1997)).

Walton's response to the complaint plainly evidences his knowledge of the Trustee's lawsuit. Walton's Motion to Dismiss or Alternative Summary Judgment too reveals that he knew or should have known that the Trustee's claims related to his own pre- and post-petition dealings with the Debtor, especially because he conceded that no entity named Walton Farms exists.

---

[20] *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011) (finding the district court took appropriate judicial notice of publicly-available documents and transcripts directly relevant to the issue underlying the Rule 12(b)(6) motion to dismiss). *See also Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 993 (S.D. Tex. 2011) (although generally the court may not look beyond the pleadings on a Rule 12(b)(6) review, it may examine matters of public record).

[21] *See* BK [ECF No. 544] at 115-16 of 119.

Walton thus had sufficient notice of the claims so that the Trustee's amendment of the complaint to name him as a defendant personally will not prejudice him.

Accordingly, dismissal pursuant to Rule 12(b)(6) is not appropriate. The Trustee is granted leave to amend the original complaint within fifteen days of the entry of this order to name Frederick Walton as the defendant.

### III. SUMMARY JUDGMENT

#### Summary Judgment Standard

Courts considering motions for summary judgment must determine whether a genuine issue of material fact precludes judgment in the moving party's favor. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record but make no credibility determinations or weigh any evidence") (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"After the movant has presented a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted).

Finally, in deciding whether an issue of material fact exists, the court must view facts and inferences drawn from the evidence in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

**Legal Analysis**

**A. Preference Claim**

The Trustee's complaint alleged that the Debtor's transfers to Walton in exchange for his services were preferential payments avoidable under Bankruptcy Code section 547(b).

Bankruptcy Code section 547 empowers a trustee to avoid preferential transfers of property made from a debtor's estate in a designated period prior to the filing of a bankruptcy case. Recovery of preferences discourages creditors from "racing to the courthouse to dismember the debtor during his slide into bankruptcy," and facilitates "the prime bankruptcy policy of equality of distribution among creditors of the debtor.*"* *In re Vartec Telecom, Inc.,* 2008 WL 376284, at *2 (Bankr. N.D. Tex. Feb. 11, 2008).

To establish the existence of a preferential transfer under 11 U.S.C. § 547(b), the Trustee must prove:

> (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the bankruptcy petition; and (6) that enabled the creditor to receive more than it would otherwise have received if the transfer had not been made and the case had proceeded under Chapter 7.

11 U.S.C. § 547(b); *Union Bank v. Wolas*, 502 U.S. 151, 154–55, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (emphasis added). The Trustee must prove each element of § 547(b) in order to prevail. *In re Studdard,* 2007 WL 2254332, at *5 (Bankr. N.D. Miss. Aug. 2, 2007).

1. Walton Has Not Rebutted the Presumption of Insolvency under § 547(f)

A debtor must be insolvent at the time of an allegedly preferential transfer for that transfer to be avoidable. *Cage v. Baker Hughes Oilfield Operations, Inc. (In re Ramba, Inc.)*, 416 F.3d 394, 403 (5th Cir. 2005). The Trustee's burden of proof is made lighter by Bankruptcy Code section 547(f), which creates a presumption of insolvency: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). This "presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion." *Herod v. Louis Dreyfus Natural Gas Corp. (In re Gasmark Ltd.)*, 158 F.3d 312, 315 (5th Cir.1998) (quoting Fed. R. Evid. 301).

Bankruptcy Code section 547(f) thus shifted to Walton the burden of producing evidence of the Debtor's solvency on the dates of the challenged transfers. *Id.*; *see also Sandoz v. Fred Wilson Drilling Co.* (*In the Matter of Emerald Oil Co.*), 695 F.2d 833, 839 (5th Cir.1983) (party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent at the time of the transfer; mere speculative evidence of solvency is not enough).

Walton contended that the Trustee's claims must fail because the *Trustee* failed to adduce evidence that shows the Debtor was insolvent.[22] He also argued that the Debtor was solvent at the time of the transfers because it was timely paying the employees transporting loads for the Debtor for the two weeks before it filed chapter 11.[23]

---

[22] AP [ECF No. 6] at 2 of 14. (emphasis added). Ironically, Walton acknowledged the presumption of insolvency yet asserted that the Trustee provided "no statement of balance sheet insolvency for BFN." *Id.*

[23]*Id.*

Walton's arguments all fail because section 547(f) imposed on *Walton* the obligation to produce non-speculative evidence to rebut the statutory presumption of insolvency,[24] but the summary judgment evidence produced by Walton failed to do so. His supporting affidavit[25] makes no reference to the Debtor's solvency. Walton's unsupported statements in his motion did not shift back to the Trustee the burden to offer further evidence of the debtor's insolvency.[26] The Debtor's payment of employees in the period before it filed bankruptcy alone does not establish that the debtor was not insolvent.

Walton is not entitled to summary judgment on the issue of the Debtor's insolvency.

### 2. Walton has not Proven his Affirmative Defenses

Walton also seeks summary judgment on several affirmative defenses to the preference claim. Specifically, he argued that he is entitled to summary judgment because the services he rendered to the Debtor prepetition were (1) a contemporaneous exchange;[27] (2) rendered in the normal course of business;[28] and (3) provided the Debtor new value because it profited from the goods Walton delivered.[29]

---

[24] Section 101(32) of the Bankruptcy Code defines insolvency as a financial condition "such that the sum of [the debtor's] debts is greater than the aggregate of, at a fair valuation, all of its property, exclusive of property transferred, concealed or removed with intent to hinder, delay, or defraud such entity's creditors…" 11 U.S.C. § 101(32)(A). *See also Sleepy Valley, Inc. v. Leisure Valley, Inc.,* 93 B.R. 925, 927 (Bankr. W.D. Tex. 1988) ("Generally, a corporation is deemed "balance sheet" insolvent for preference purposes if the sum of its debts exceeds all of the entity's property at fair valuation.…").

[25] *Id.* at Exhibit A.

[26] Federal Rule of Evidence 301 provides that the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption; however, the rule does not shift the burden of persuasion, which remains on the party who had it originally. *See also Matter of Emerald Oil Co.*, 695 F.2d 833, 839 (5th Cir. 1983).

[27] AP [ECF Nos. 6, 8].

[28] *Id*.

[29] *Id*.

Walton's affidavit explained that he only transported nursery stock for the Debtor and never bought or sold its products before bankruptcy.[30] Walton also attached records of deliveries (*see* AP [ECF No. 6] at Ex. A) he claims to have made to the Debtor or for its benefit. However, his affidavit did not authenticate the records, which do not themselves identify Walton and the Debtor as the parties associated with the loads, list the price Walton charged for each load or give dates for the services he claims to have rendered. Walton also filed with his motion a June 22, 2016 letter (the "**Letter Agreement**") (*see* AP [ECF No. 6] at Ex. B) electronically signed by Eric W. Ek, the Debtor's Chief Executive Officer. The Letter Agreement appears to be an offer to negotiate partial payment of Walton's claim in exchange for his continued services. *Id.* Walton contends that this agreement enabled the Debtor to satisfy part of Walton's claim for services he purportedly rendered during the two weeks before the chapter 11 filing. AP [ECF No. 6] at 2 of 14.

The Trustee counters that the documents Walton submitted as evidence were insufficient to support his defenses.

### 3. Walton Did Not Prove that the Transfers Were Made Between the Parties in the Ordinary Course of Business

To prevail on his section 547(c)(2) ordinary course of business defense, Walton had to prove that the challenged transfers were:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms.

11 U.S.C. § 547(c). *See also Matter of Gulf City Seafoods, Inc.*, 296 F.3d 363 (5th Cir. 2002). Once again, the creditor/transferee bears the burden of proof with respect to all three elements. *See* 11 U.S.C. § 547(g).

---

[30] AP [ECF No. 8] at ¶¶ 5, 6.

Courts evaluate the ordinary course of business defense using both a subjective test [§ 547(c)(2)(A)] and an objective test [§ 547(c)(2)(B)].[31] The subjective test examines whether the transfers were "ordinary as between the parties," while the objective test seeks to determine whether they were "ordinary in the industry."[32] The transaction must satisfy only one of the two tests to escape avoidance as a preferential transfer.[33]

Walton has failed to establish an ordinary course of business defense under either test. Even if Walton's affidavit provided a basis for their admission, the invoice records and Letter Agreement are not evidence of the timing of the Debtor's payments to Walton or the historical course of dealing between Walton and the Debtor. Nor do they in any other way demonstrate that the challenged payments were consistent with the parties' prior course of dealings.[34] Without that evidence, Walton did not establish that the Debtor's payments to him were insulated from avoidance as having been made in the ordinary course of business.

#### 4. Walton's Evidence does not Prove that the Transfers Were Contemporaneous Exchanges for New Value

To prevail on his section 547(c)(1) contemporaneous exchange defense, Walton was required to prove that the challenged transfers were "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1); *see also* 11 U.S.C. § 547(g).

---

[31] *In re ACP Ameri-Tech Acquisition, LLC*, 2012 WL 481582, at *7 (Bankr. E.D. Tex. Feb. 14, 2012).

[32] *Id.* (internal citations omitted).

[33] *See Caillouet v. First Bank & Trust (In re Entringer Bakeries, Inc.),* 548 F.3d 344, 351 n. 9 (5th Cir. 2008).

[34] *See In re Ideal Sec. Hardware Corp.*, 186 B.R. 237 (Bankr. E.D. Tenn. 1995) (self-serving testimony is not determinative of the ordinary course of dealing between the parties).

Walton's sole basis for this defense is that "Defendant hauled and delivered Debtors [sic] nursery plants [sic] flowers, etc [sic] to retail outlets such as Wal-Mart, Lowes, Home Depot, etal [sic]."[35] This statement, alone, is not evidence of the elements required under section 547(c)(1) so Walton is not entitled to summary judgment on this defense.

### 5. Walton Did Not Prove any Subsequent Advances of New Value to the Debtor

Walton next argues that the transfers were not avoidable because he gave the Debtor new value after he received the payments, thus insulating the payments from avoidance under section Bankruptcy Code 547(c)(4). That defense requires proof that after the transfers, Walton "gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 574(c)(4); *see also* 11 U.S.C. § 547(g).

Walton's new value defense rests on his claim that the Debtor sold product he hauled for a sum well in excess of the amounts he was paid for his services.[36] But even if proven, that fact alone does not establish a subsequent new value defense.[37] Nor do the invoice records and Letter Agreement support the defense.

Walton's new value defense does not entail merely netting the payments between the parties during the preference period: it requires a more detailed analysis of whether the "new

---

[35] AP [ECF No. 6] at 3 of 14.

[36] *Id.*

[37] *See Clark v. America's Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir.1997) (legal conclusions contained in an affidavit are not competent summary judgment evidence); *see also Cimmaron Oil Co. v. Cameron Consultants, Inc.*, 71 B.R. 1005, 1008 (N.D. Tex. 1987) (Appellant "challenges the bankruptcy court's *legal conclusion* that [the creditor-transferee] exchanged new value merely by accepting payments and giving up the right to perfect its statutory liens") (emphasis added).

value"—as defined by Bankruptcy Code section 547(a)[38]—has augmented or materially benefited the debtor's estate, thereby offsetting the reduction in the estate by its otherwise preferential transfers to Walton before the Debtor filed bankruptcy .[39] The new value must have replenished the Debtor's estate effectively repaying an earlier preference.[40]

The Letter Agreement refers only to payment of expenses the Debtor incurred after the Petition Date to be paid in the ordinary course of business as provided in the Bankruptcy Code.[41] This reflects only that the Debtor treated Walton as a vendor with a potential prepetition claim against it. It does not specify the dates or cost of the shipments Walton made to or for the Debtor or link specific transfers to payments Walton received. Nor does it establish the effect the payments had on the Debtor's estate.

In sum, even if the documents accompanying Walton's motion were admissible, they do not establish his subsequent new value defense.

In conclusion, Walton has failed to establish his right to summary judgment under section 547(c) on any of the defenses he claimed to the Trustee's preference claim.

### B. Fraudulent Transfer and Recovery

The Trustee's fraudulent transfer claim under section 548(a)(1)(B) requires proof that:

(1) the transfer was a transfer of an interest of the debtor in property; (2) made within one year of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent when the transfer was made or rendered insolvent by

---

[38] 11 U.S.C. § 547(a)(2) defines "new value" as money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

[39] *In re Loggins*, 513 B.R. 682, 713 (Bankr. E.D. Tex. 2014).

[40] *In re Micro Innovations Corp.*, 185 F.3d 329, 332 (5th Cir. 1999); *In re Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1091 (5th Cir.1994); *In re Consol. FGH Liquidating Tr.,* 392 B.R. 648, 658 (Bankr. S.D. Miss. 2008).

[41] AP [ECF No. 6] at Ex. B.

the transfer.

11 U.S.C. § 548 (emphasis added).

Frederick Walton as the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Davis v. Ft. Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The party seeking summary judgment may meet its initial responsibility by demonstrating that nonmovant will be unable to produce any evidence at trial supporting an essential element of her claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Stagliano v. Cincinnati Ins. Co.*, 633 Fed. App'x 217, 219 (5th Cir. 2015). However, "it is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex*, 477 U.S. at 328 (White, J., concurring); *In re Anderson*, 562 B.R. 135, 138 (Bankr. S.D. Tex. 2016).

Walton's demand for summary judgment rests on his contention that the Debtor was solvent on the dates of its transfers to him because it was paying employees for their services two weeks before the bankruptcy filing.[42] Even if this conclusory assertion were supported by admissible evidence (*see* § III.B., *supra*), the Debtor's payment of its employees in the run up to bankruptcy does not alone prove its solvency as required for avoidance actions. *See Matter of Lamar Haddox Contractor, Inc.*, 40 F.3d 118, 121 (5th Cir. 1994) ("corporate debtor is insolvent when its "financial condition [is] such that the sum of [its] debts is greater than all of [its] property, at a fair valuation....") (citing 11 U.S.C. § 101(32)(A)).

Nor does Walton allege, much less prove, his right to an affirmative defense under

---

[42] [AP ECF No. 6] at 2 of 14.

section 548[43] that would support his demand for summary judgment.

Thus, Walton's motion for summary judgment as to the fraudulent transfer claim is

denied.

### C. Preservation of Avoided Transfer

Section 550 prescribes the rights and liabilities of a transferee of an avoided transfer and

authorizes the Trustee to recover the property or value of the property transferred.  11 U.S.C. §

550(a).  Subsection (a) permits a trustee to recover property transferred, or value of the property

transferred, from the initial transferee of an avoided transfer or any immediate or mediate

transferee – the "subsequent transferee" – of the initial transferee.  11 U.S.C. § 550(a)(1) and (2).

The statute provides an avenue of recovery for a trustee prevailing in an avoidance section,

which enables the trustee to maximize the assets available for distribution to creditors and

equalizes the distribution of those assets among the creditors.[44]

Walton's request for summary judgment on the Trustee's section 550 recovery claim is

premature until the avoiding actions are tried.

### D. Disallowance of Claims

Finally, the Trustee's complaint in count IV seeks disallowance of Walton's claims

pursuant to 11 U.S.C. § 502(d), which directs the court to "disallow any claim of any entity from

which property is recoverable under section 542, 543, 550, or 553 of this title or that is a

transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a)

of this title."  Section 502(d) disallows the claims of creditors who have received avoidable

---

[43] An action for avoidance in a bankruptcy case of a prepetition fraudulent transfer or obligation pursuant to 11 U.S.C. § 548(a)(1)(B) may be defended on the ground that: (1) the defendant is a good-faith transferee or obligee who took for value as provided in § 548(c); (2) the defendant is entitled to the safe harbor protection for qualified religious or charitable entities under § 548(a)(2); or (3) the plaintiff is precluded from asserting a claim against the defendant under the doctrine of equitable estoppel or laches (*see generally, In re Texas Rangers Baseball Partners*, 521 B.R. 134 (Bankr. N.D. Tex. 2014).

[44] *In re Enron Corp.*, 319 B.R. 128, 133 (Bankr. S.D. Tex. 2004).

transfers unless the creditor relinquishes the transfer.  11 U.S.C. § 502(d).  *See also Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 659 (S.D. Tex. 2007).

Because this claim cannot be determined until the avoidance actions are adjudicated, Walton's motion for summary judgment on count IV is denied as premature.

## IV.        CONCLUSION

Walton's motion to dismiss and for summary judgment are denied, and the Trustee's claims will proceed to trial.  Counsel for the Trustee shall amend the original complaint to name Frederick Walton as the defendant and shall submit a proposed form of order denying the Defendant's motion within fifteen (15) days from the entry of this memorandum opinion. Counsel for the Trustee must also confer with the Defendant and submit an amended scheduling order within fifteen (15) days of the entry of this memorandum opinion.

### # # # END OF MEMORANDUM OPINION # # #